# Wheeling.

## SAMUEL M.. BELL vs. JOHN BELL.

### *January Term, 1869.

1. B., who was a resident of Pennsylvania, was proceeded against by foreign attachment in chancery. He appeared before the judge of the circuit court in vacation, and gave bond to satisfy the decree of the court, if any should be rendered against him, and the fund attached was released to him. Three months afterwards he presented a petition and bond for the removal of the cause from the State court to the Federal court. HELD:

> That his voluntary act in going into the State court and submitting himself to its jurisdiction by appearing to the attachment, was a complete waiver of the privilege which he would have had if he had been compelled to appear against his will by the mandate of the court.

2. The right of removing a cause from a State to a Federal court is a privilege to be exercised at the option of the party defendant, but to oust the general jurisdiction of the State court the party seeking to do so should avail himself of the privilege at the earliest opportunity.

3. The bond tendered in such case must provide for the appearance of the applicant in the cause in the Federal court.

4. Where the parties plaintiff and a part of the defendants, in a suit in a State court, are resident in the State, there can be no removal to the Federal court.

5. B. was an agent for the sale of a tract of land, and concealed from his principal the knowledge which he had acquired as such agent respecting the price at which the land could be sold, and taking undue advantage of his position as agent purchased the land from the principal, who was then ignorant of material matters affecting the value thereof at that time, and sold it for a much larger sum. HELD:

> That it was the duty of B. to have disclosed to the principal his knowledge thus acquired before he made such purchase, and that he must account to the principal for the sum he received for the land, over and above the amount paid by him to the principal.

* This case was argued at July term, 1868, when Harrison, J., was absent from illness.

This cause was heard in Ohio county, and the bill was filed at April rules, 1865. The matters arising on the question of the removal of the cause from the State to the Federal court is fully stated in the opinion of the judge.

The bill charged that John Bell, the complainant, of Belton, in Marshall county, being in bad health, was desirous of selling the tract of land on which he resided, and appointed his brother, Samuel M. Bell, of Washington county, Pennsylvania, as his agent to find a purchaser for his land, and agreed to pay him 300 dollars for his trouble; that the defendant Samuel M. Bell, finding that he could not sell the land for 45,000 dollars, fraudulently represented that he could sell the land for 16,000 dollars, but that it was necessary to make title to the defendant at once, which he accordingly did. That in fact the defendant did sell the land for 45,000 dollars and had received the money therefor, and had refused to account to the complainant for any part thereof except the 16,000 dollars, deducting therefrom the 300 dollars; that there was due him 28,700 dollars from the defendant, and that there was estate or debts due the defendant from the M. & M. Bank of Wheeling. The bill asked that the defendant be required to account for the residue of the 45,000 dollars. The defendant answered, denying that the complainant was unable to attend to his own business, and that he was his agent, but that he was verbally requested by the complainant, in the spring of 1864, to assist him in the sale of his land; that he had no authority to contract for the sale of the same; that the price demanded by the complainant for the land was 16,000 dollars, which was its full value at the time of the purchase by him and when it was conveyed to him by deed, to wit: on the 23rd day of January, 1865. That he made efforts to sell it in the fall and winter of 1864 for 16,000 dollars, but not being able to do so concluded to purchase it himself, and made a contract with the complainant for the purchase on the 3rd day of January, 1865, for the sum of 16,000 dollars, 1,000 dollars whereof was paid down and the residue was to be paid April 1st, 1865. That at the time of the purchase he did

not know the party to whom he subsequently sold, one Col. L. S. Stephenson, and had made no contract of sale for the same. That about the 19th of January, 1865, he notified the complainant that he would pay him the whole of the purchase money, and asked him to convey the land to him, which he did on the 23rd day of January, following, when, through his brother, James R. Bell, who wrote the deed, he paid him by a check on the M. & M. Bank, of Wheeling. He denied having told the complainant that at the time of making the contract he had sold the land for 16,000 dollars, and that he was acting as an agent, but alleged that from that time he was acting in his own behalf and was not accountable to any one.

Several depositions were taken by both parties to prove the allegations of the bill and answer. It was proved for the complainant that in December, 1864, the defendant had stated that he was the agent of the complainant for the sale of the land, that he had been with Col. Stephenson to examine the property in January, 1865; that Stephenson had stated that the defendant had sold the property as the agent of the complainant. That about the time of the sale to the defendant the complainant was in bad health, and at times was not thought to be in his right mind. That about the 2d or 3d of January, 1865, the defendant had stated to a witness that he was going to sell the land of the complainant, that he was in bad health and could not live long and his business ought to be settled up. The testimony of several witnesses was to the same effect as the above. That about the 17th of January, 1865, the defendant stated that he had sold or was about to sell the complainant's land, for the sum of 16,000 or 17,000 dollars; that his brother, the complainant, was unwell and had authorized him to do so and he was to receive 500 dollars for his trouble, and that Col. Stephenson was travelling in company with the defendant at the time he made these statements. That in February or March, 1865, the defendant in conversation with some parties on the flat farm, at Belton, told them, in reply to a question as to the conditions on which he had bought the

property, that the defendant had employed him as his agent to sell the property at 16,000 dollars, nothing less than that sum; anything over 16,000 dollars John Bell, the complainant, was entitled to, and the defendant had been paid 300 dollars for his services. It also appeared by exhibits filed with the depositions of some of the witnesses that the defendant had contracted with Col. Stephenson for the land on the 16th day of January, 1865, at the price of 45,000 dollars, 2,000 dollars whereof was paid at the time, 20,000 dollars was to be paid March 1st, 1865, and the residue was to be paid on the first of April, following; and that the defendant conveyed the land by deed to certain parties to whom he was directed to do so by Col. Stephenson, on the 28th day of February, 1865, in fee simple. For the defendant it was proved that the complainant had said on or about the time of his conveyance to the defendant, that he did not believe that the land had been sold for 45,-000 dollars by the defendant, and if he had done so he did not care as he had got all he asked for it, had got his money and was satisfied. There were two or three depositions to this effect. It was also proved by the defendant that the complainant had stated that he had sold to the defendant and did not know any one else in the contract, and that it was not an option sale, it was a sure thing, and he had got his money; that he did not care much about oil excitements, he had sold for his price, made the deed and got the money.

In May, 1867, an amended bill was filed by the complainant setting up the new matter disclosed by the exhibits filed with the depositions, viz: that the defendant learning that he could sell for more than 16,000 dollars, fraudulently represented that sum as all he could get for it, and the complainant being wholly ignorant of the negotiations of the defendant with other parties, conveyed the land to him, whereas in truth and in fact the defendant had sold and contracted to convey the same to other parties for the sum of 45,000 dollars before the complainant's conveyance to him.

To this the defendant answered, denying any agency as before or any fraud on his part, and alleging his purchase by the contract of January 3d, 1865, before the contract with Col. Stephenson on the 16th of January, 1865; that to enable him to sell for the sum of 45,000 dollars he had to take stock in an oil company which was then boring and operating on the land, and he did not yet know what his liabilities might be in respect to the result thereof.

The circuit court of Ohio county decreed in May, 1867, that before the contract for sale on the 3d day of January, 1865, the defendant was the agent of the complainant for the sale of the land; that he concealed from his principal the knowledge which he had acquired as such agent respecting the price at which the land could be sold, and taking undue advantage of his position as such agent purchased the land from his principal, who was then ignorant of material matters affecting the value thereof at the time, which it was his duty to have disclosed to the principal: therefore it was adjudged that the defendant was liable to pay over to the complainant the residue of the 45,000 dollars over and above the sum paid by the defendant to the complainant, less 300 dollars, which he was to receive for his services, with interest from the time the money was received by him.

From this decree the defendant appealed to this court.

*Peck & Hubbard* for plaintiff in error.

This was a suit by foreign attachment, by John Bell against Samuel M. Bell, upon a claim of 28,700 dollars, for so much money had and received for his, John Bell's, use.

The bill was filed at the April rules, 1865. Money had been attached in the possession of the Merchants and Mechanics' Bank, of Wheeling, which was released by a bond under the act.

. The bill, in substance, claims that John Bell, living in Marshall county, was seized of 1,200 acres of land, and being in bad health, and wishing to sell his land in order to make suitable provision for his wife and children, employed

his brother, S. M. Bell, who lived in Pennsylvania, to ι ᛌ deavor to sell the same, and was to pay him 300 dollars fo.ᛌ his services.

That S. M. Bell, finding he could dispose of the same at 45,000 dollars represented that he could only sell it for 16,000 dollars, induced John Bell to sell and convey the same to him, in order that he could, as John Bell's agent, convey the same to the purchaser, and did sell the same, *as his agent*, for the said sum of 45,000 dollars, about the 23d day of January, 1865, and paid him, John Bell, the sum of 16,000 dollars less the 300 dollars for his services, and owes him the said 28,700 dollars, the balance of the said purchase money.

The bill does not disclose one word about any written contract between the parties.

The answer of S. M. Bell admits, that in the summer of 1864, his brother, John Bell, requested him to assist him in the sale of the land, and fixed the price at 16,000 dollars. That he did make some efforts during the summer to do this, without effect. He explicitly denies any contrat whatever for any agency, and he insists that at no time had he any authority to sell the same, or make any binding contract therein. That in the latter part of December, 1864, he proposed to purchase the land for himself, of John Bell, which resulted in nothing; but, that afterwards, on the 3d day of January, 1865, he entered into a written contract with John Bell to purchase the land for the sum of 16,000 dollars; 1,000 dollars to be paid down, and was paid down, and receipted on the contract. The 15,000 dollars was to be paid on or before the 1st of April, 1865, and when paid, the deed was to be made. At this time John Bell lived on the land, at Belton.

That, on the 16th day of January, 1865, S. M. Bell sold the land to Col. Stephenson, by a contract in writing, for 45,000 dollars, and he was to, and did take out of that 1,000 dollars of stock, and became a partner in a company who bored into the earth nearly 1,000 feet for oil, but found none.

That, on or about the 21st of January, 1865, S. M. Bell

sent a letter from Wheeling to John Bell, at Belton, enclosing a check for 15,000 dollars, the remainder of the purchase money.

This was in such kind of funds that John Bell was credited in the Merchants and Mechanics' Bank with 15,037 dollars and 50 cents.

When John Bell received this check, he told his brother, J. R. Bell, that he would not convey his land until he had the money, and he having endorsed it and delivered it to J. R. Bell, James R. Bell came to Wheeling to find out if the check was good, and endorsed it, and it was paid, by giving John Bell credit therefor in the Bank.

On the 23d of January, 1865, J. R. Bell wrote the deed and it was executed by John Bell, before him, as a notary public, and sent to S. M. Bell.

This money, it is alleged, was not paid out of the money he afterwards, in February, 1865, got from the Boston company.

Long after John Bell knew of the sale to the Boston company, he professed himself to be entirely satisfied with the sale he had made, and insisted it had been a *bona fide* sale from himself to S. M. Bell.

The questions arising are principally of *fact:*

1. In the purchase and sale of the land, did S. M. Bell act on his own behalf or as the *agent* of John Bell? The plantiff in error contends that the proof is ample, that he acted on his own behalf and not on behalf of John Bell. If he acted on his own behalf, he cannot be called to any account for his act; if he acted as the *agent* of John Bell, he can be called to an account.

We have seen that on the 3d day of January, 1865, by a contract in writing, John Bell agreed to sell his land to S. M. Bell, and received 1,000 dollars of the purchase money. This, without proof to the contrary, would be conclusive that it was a sale and that S. M. Bell acted in his own behalf.

3. On the 23d day of January, 1865, the remainder, in *full*, was paid and received, without any deduction what-

ever, and the deed was made and delivered to S. M. Bell by John Bell, *after* he had said that he would not make the deed without the full payment of the money..

Now, if he was conveying to S. M. Bell for the purpose of enabling him to make the deed to some one else, as his *agent*, he would not have demanded the money, only as agent should receive it.

This is rather conclusive as to any agency in the matter.

In addition to this, he afterwards, and after the company had commenced its operations, made admissions and declarations to his neighbors strictly in conformity with the facts. thus stated, and seemed to greatly rejoice that he had made this sale. He even bragged about it, and compared it with the optional sales his neighbors had made of their land.

The land, in fact, had never been worth over 16,000 dollars.

The plaintiff insists that the bill ought to have been dismissed on its merits.

There is another question in the case:

When the defendant below appeared in the case, he filed his petition, showing that he was a citizen of the State of Pennsylvania and had been sued here by a citizen of the State of West Virginia, and that the claim was over 500 dollars exclusive of costs, praying for the removal of the same to the Federal court, under the act of Congress. This motion the circuit court refused, and S. M. Bell excepted. He now claims that the decree should be reversed for that cause, and be sent back to the circuit court with directions to certify the case to the Federal court. *Gordon* vs. *Longest*, 16 Pet. Rep., 97–104.

*Lamb & Paull* for the defendant in error.

BROWN, President. This was a foreign attachment, under the statute, by the plaintiff, John Bell, against the Merchants' and Mechanics' Bank of Wheeling, and the absent defendant Samuel M. Bell, to attach in the hands of the bank some 28,700 dollars, due from said bank to said ab-

sent defendant. The process was executed on the bank and an order of publication awarded and duly executed against the absent defendant.

In this state of the case the absent defendant might appear at rules and do what was necessary to protect his interests. By the 13th section, chapter 151, Code of 1860, he might release from the attachment the estate attached by giving bond with condition to perform the judgment or decree of the court. This bond to be taken by the officer serving the attachment.

And by the 15th section of same chapter, the circuit court might in vacation discharge the attachment on the defendant's giving bond with security to pay or satisfy the decree, if any should be rendered for the plaintiff in the suit. And so the absent defendant did; for on the 1st day of August, 1865, he appeared before the judge of the said court in vacation, and on his motion the attachment in the cause was discharged, upon his giving bond and security before the clerk of said court, conditioned according to law, which bond he thereupon gave, but made no motion then for the removal of said cause to the Federal court. Afterwards, at the next term of said court, to wit: on the 31st day of October, 1865, the said defendant, Samuel M. Bell, presented in court his petition and bond for the removal of said cause from the State to the United States court. But the court, upon consideration of the motion, overruled the same, and then proceeded to decide the cause upon its merits. This refusal of the court to remove the cause is now assigned for error and is the first question to be determined in the cause. The right of removing a cause in any particular instance from the State court to the Federal court is a privilege and not a duty, and may be exercised or not at the option of the party defendant entitled to the privilege; but to oust the general jurisdiction of the State court the party who would avail himself of the privilege should do it at the earliest opportunity, because like a plea to the jurisdiction or other dilatory plea, it should not be used for delay, if delayed in the use.

The facts stated show that the absent defendant appeared, gave bond and security to satisfy the decree of the court, and obtained a discharge of the fund attached, but made no motion for removal of the cause until the next term of the court, about three months after his first appearance. Here then was delay in the use of a privilege claimed which might not be used for delay. *Redmond* vs. *Russell*, 12 John., 153; *Gibson* vs. *Johnson*, Peter's C. C. R., 44; *State of Pennsylvania* vs. *Corbett*, 3 Dallas, 467; also 1 Paige's Chy Rep., 153. There is another fatal objection to the motion for removal, and that is, that the bond tendered by the applicant for the removal did not provide that he should appear in the cause in the Federal court. It simply provided "for his entering in such court—copies of said process against him;" but omitted the succeeding clause of the statute, "and also for his there appearing," &c. As he was not a resident of West Virginia, but of Pennsylvania, and the subject matter a foreign attachment, the Federal court in this State had no jurisdiction of his person nor of the subject, and it was therefore of the highest importance that he should enter his personal appearance and that the bond should provide for it if the case was to be removed.

Again, one of the defendants was a resident of this State and therefore the Federal court had no jurisdiction on account of the parties plaintiff and part of the defendants being residents of the State, and consequently there could not be a removal on that ground. *Ward* vs. *Arredondo*, 1 Paine, 410; Conkling's Treat., 154-5.

Nor could the defendant below have been sued in said court as he was not a resident in the said district, and if he had been he might have pleaded the fact of his non residence in abatement. It is not competent therefore for the defendant below to oust the State court of its rightful jurisdiction and give it to the Federal court which had none; neither over the subject, because it was a foreign attachment; *Picquet* vs. *Swan*, 5 Mason, 35; *Toland* vs. *Sprague*, 14 Peter, 300; nor over the person of the defendant, because he was a non resident. The attempt to oust the State court

is made under the 12th section of the judiciary act, which authorizes such removal when the suit is brought by a citizen of the State in which the suit is against a citizen of another State.

Now it is manifest that the object of this act was to secure the defendant, who has no choice in the matter, against the supposed advantage the plaintiff might have in selecting the courts of his own State instead of the courts of the defendant's State. If the plaintiff chose to go into the defendant's State and sue him there the defendant had no right of removal. And it would seem but correlative if the defendent should go into the plaintiff's State, and there voluntarily submit himself to the jurisdiction of the State court by appearing to a foreign attachment, that he too should not in such case have the privilege of removal.

The plaintiff makes his own selection while the defendant is compelled to appear by the process of the court having jurisdiction of his person. But if a person whose property is attached, himself not amenable personally to the court because beyond its jurisdiction, chooses to go of his own accord and submit himself personally to its jurisdiction, by appearing to the attachment, he is no more within the reason and equity of the statute than the plaintiff is. Indeed, as respects the object and spirit of the act, he is in fact, though not in name, the plaintiff. And it is the substance and not the name that is to be regarded when the terms of a statute are sought to be perverted to defeat the end in view in its enactment.

I think, therefore, that if there were no other ground for overruling the motion for removal, the voluntary act of the defendant in going into the State court and submitting himself to its jurisdiction, by appearing to the attachment, was a complete waiver of the privilege which he would have had if he had been compelled to appear against his will by the mandate of the court.

In the case of *Pollard* vs. *Dwight*, 4 Cranch, 421, the defendant having without objection obtained a removal of the cause from the State court to the Federal court; afterwards,

when judgment was rendered against him in the court of his choice, appealed to the supreme court of the United States and there alleged the want of jurisdiction in the Federal courts over foreign attachments, as a ground to defeat the jurisdiction of the very courts he had himself invoked. The other side which might more properly have objected made no such objection.

The court in that case overruled the objection, saying that the appearance of the defendant made the proceeding personal as to him, and such was unquestionably true. The case on its merits was glaringly erroneous and unjust to the defendant, and the court would very naturally be inclined to give relief where the merits of the cause demanded it, and the appellee raised no objection to the jurisdiction, and where the appellant who had invoked its action ought not to be heard to deny its authority.

The distinction between that case and this is, that the appellant in that case who objected to the power of removal had himself obtained the removal, while the other party made no such objection, either to the removal or to the right of removal.

Here, however, the objection comes from the other side, and from the party that is not estopped by his own acts to make it.

I think, therefore, that the application for removal was properly overruled by the circuit court.

And on the merits of the case I see no good reason to disturb the decree of the court below, since the law of the case is plain and simple, and the facts and circumstances of the case would not justify this court in reversing the conclusions arrived at by the court below.

I am of opinion, therefore, to affirm the decree of the circuit court with costs to the appellee.

Maxwell, J., concurred.

DECREE AFFIRMED.