# CHARLESTON.

## ELLIS *v.* HEPTINSTALL.

### March 4, 1875.

1875.
January Term.
1. An attorney to the record, or the original counsel employed by a party to collect a debt, or conduct a suit, may constitute or appoint another to act in his room or stead, if so authorized by his client.

2. It may be conclusively inferred from facts and circumstances shown in evidence, that an attorney during the late civil war, was authorized by his client, to receive payment on a claim in his hands, in Confederate money—all the parties being and residing at the time within the Confederate lines.

Appeal and *supersedeas*, granted on the petition of William Ellis. The decree from which the appeal was taken was rendered in the Mercer circuit court, on the 11th day of September, 1872. The parties to the suit, as shown by the printed record in the case were, William Ellis complainant, and William F. Heptinstall, Augustus A. Chapman and others, respondents.

The other facts appear in the opinion of the Court.

The Hon. Henry L. Gillaspie, judge of said circuit court, presided at the hearing below.

*James W. Davis*, for the appellant.

*Henry L. Gillaspie*, for the appellees.

PAULL, JUDGE:

In February, 1861, A. A. Chapman, suing for the use of William Ellis, the plaintiff in the present suit, and

the assignee of the bond for $420 made to said Chapman, filed his bill against William F. Heptinstall and others, for the recovery of said bond, and the subject to sale the land which had been sold by said Chapman to said Heptinstall, and for the part purchase money of which said bond had been given. The beneficiary plaintiff in said suit, the said William Ellis, employed as his attorney, John Echols, who brought the suit in the name of Chapman, for the use of said Ellis, filing the bill in February, 1861. This bill was never answered by said Heptinstall, or the other defendants, and in October, 1866, (no other proceedings ever being had therein) the following entry was made: "By agreement of the parties the foregoing cause is dismissed."

In January, 1871, the said William Ellis filed his bill in the present case, against the said A. A. Chapman, the said William Heptinstall and others, in which he sets forth the execution of said bond, by said Heptinstall to said Chapman, and the assignment thereof, by said Chapman, to himself; his employment of said Echols to bring suit thereon, and making a transcript of the record of said suit, so brought, and hereinbefore referred to, an exhibit with said bill. The bill further alleges that plaintiff never knew and was never advised until within a few weeks before bringing the present suit, that the former one had been dismissed or stricken from the docket of the court; that the order dismissing the same was made without his knowledge or consent; further alleging that said order was fraudulently procured to be made by said Heptinstall, and that said A. A. Chapman and said Heptinstall, did, without authority from the plaintiff, and without his knowledge and consent, procure said order to be made, and that the same was in fraud of the plaintiff's rights; that the said A. A. Chapman was not at any time attorney or counsel for the plaintiff, in or about said suit, or about the collection of said debt; that said bond, and no part thereof, was ever paid to the said plaintiff, but that the same is still due and unpaid, and

now remains in the papers of the original suit, and praying that the land may be sold for payment of said bond, and for general relief.

Defendant Heptinstall answered the bill, admitting the purchase of the land, and the execution of the bond, and the bringing of the former suit; and alleging that some time in the year 1863 he paid the whole amount of said bond to said Chapman, *believing* that he had a right to receive the same, both as agent and attorney for the plaintiff, acting in the place of said Echols, who was then an officer in the Confederate army; that in 1866, said Chapman moved the court to dismiss the suit, which was done, and in May, 1867, said Chapman acknowledged a deed, conveying said land, and which deed is now on record, and denying all fraud in these transactions.

A. A. Chapman, defendant, also answered the bill, admitting the execution and assignment of said bond, and the bringing of the original suit by said Echols; alleging that being asked by said Echols to attend to any of his cases in the courts of Mercer county, he promised to do so; and that some time after being applied to by Heptinstall to know to whom he could pay the money, which seemed to be due to the plaintiff, (said Echols having gone into the Confederate army,) he replied that he supposed that he was authorized to receive the money for Ellis; that the money was received, being what was known as Confederate money, the only currency in use at that time in that section of the country; that said money was funded by him in the name of the plaintiff, pursuant to an Act of Congress of the Confederate States; but he is not sure that he informed the plaintiff of what he had done until after the close of the war, when Confederate money and bonds were worthless; that he has no recollection in regard to the dismissal of the former suit, but has no doubt that he assented to the same, and denying all fraud, &c.

The principal evidence is found in the depositions of the parties themselves. Defendant Heptinstall, testifies that he had a letter from said Echols in 1862 or 1863, saying he would take Confederate money for all the debts for which he had brought suit, but this letter was not produced: he testifies further that the payment was actually made to Chapman some time in the year 1863, in Confederate money, he believing that Chapman was authorized to receive the same.

Chapman also testifies that he received Confederate money in payment of said debt, and that the same was funded in accordance with the Act of the Confederate Congress.

The *first* question presented for our determination is, was defendant A. A. Chapman the counsel of plaintiff Ellis in this cause, and clothed with the usual authority of an attorney in the management of suits and the collection of debts? It is true that he never was personally employed by the plaintiff himself as his counsel in the former suit, and plaintiff expressly denies that he ever knew that he claimed to act as counsel for him in that case, and that said Echols was the only party whom he had employed as his counsel for bringing the suit and collecting that debt. While this is admitted by the defendant, Chapman claims to have been counsel for the plaintiff by virtue of authority derived from said Echols, the original counsel, who had requested him to attend to his cases in Mercer county, and that he, Chapman, had promised to do so—said Echols having gone into the Confederate army. By virtue of his authority, so derived, he acted as counsel in the conduct of the suit, and received payment of the debt from defendant Heptinstall.

Counsel or attorneys to the record have now large powers in conducting the suits, and often concluding the interests of their clients. They are selected by parties for what are regarded as their ability, learning, integrity and fidelity, which are qualities of a personal character, and their duties and powers are not of a nature to be del-

egated to others by the attorneys who are first entrusted therewith. Others may, indeed, be requested or appointed by them to act in their place, but such appointment must first be authorized, or subsequently ratified, by the client, to give it validity.

In the present case, such authority seems to have been given by the plaintiff to the original counsel, and upon that authority we presume the appointment was made. The authority was of a general nature, referring to the appointment of no particular person. We cannot otherwise construe the following language employed by the plaintiff in his bill: "He charges that General John Echols was his attorney, and brought said suit in chancery in the Mercer circuit court, and filed said bond with the bill. That some time after the close of the war General Echols removed from this State and ceased to practice in the Mercer circuit court. That your orator rested easy, supposing that General Echols had procured some other attorney to attend to the case, and that the same would be properly attended to by the said Echols or his associate, and never was advised or knew better until," &c. Thus the plaintiff was acting upon the supposition, as he says, that some other attorney had been procured, by the one selected by himself, and, as we must presume from his language, from authority given by himself. If the subsequent action of the counsel, so procured or appointed, was not in accordance with his wishes, it cannot vary or affect the validity of the appointment.

Regarding A. A. Chapman as the counsel for the plaintiff, had he a right to receive from the defendant Confederate money in payment of the bond on which suit had been brought?

An attorney or counsel may receive money in payment of a debt due to his client, and the payment is valid. It is shown by the evidence in the record that Confederate States Treasury Notes were the only circulating medium in the county when this payment was made;

that the same were received in payment of taxes under the laws of the State of Virginia, under whose jurisdiction the parties were then living; that the general business of the county was conducted by means of this currency, in which payments were, almost, universally made; that other payments had been made to said plaintiff, by the said Chapman, in Confederate money, from collections in his hands, and that he, plaintiff, had received and lost a large amount of Confederate money during the late war, and that he, plaintiff, was a true and faithful friend of the Southern Confederacy, acting at one time as a provost marshal in the county of Monroe; from all which it must be conclusively inferred that said Chapman was fully authorized, by plaintiff, to receive Confederate money, at that time, in payment of said bond; and the payment, thus made, must be regarded as valid and binding upon the plaintiff.

After a careful examination of the evidence, although knowledge of this payment was not communicated to the plaintiff until after the close of the war, we do not think there is sufficient reason to justify the belief that the defendants designed, in this transaction, in making and receiving this payment, to commit a fraud upon the interests of the plaintiff.

The decree of the circuit court of Mercer county, made on the 11th day of September, 1872, must be affirmed, with costs to appellees, and $30 damages.

The other Judges concurred.

DECREE AFFIRMED.