Anderson J.
delivered the opinion of the court.
By section 1, of the act of assembly of the 21st of February 1872 (Sess. Acts of 1871-’72, ch. 114, p. 91) the charter of the Fredericksburg, Orange and Charlottesville Railroad Company is extended for a period of five years from the first day of March 1872, for the purpose of enabling the company to complete the railroad, and to extend the same.
For that purpose, and to pay certain, debts, the said company, by section 2, is authorized and empowered to borrow a sum of money, *411 not exceeding twelve hundred thousand dollars, and at a rate of interest not exceeding seven per cent, per annum; and to secure the money so borrowed, to issue coupon or registered bonds, in such sums as the directors may deem best; and the president and directors are authorized and empowered “to execute a lien on all the property, rights and franchises of said company, existing at the time of the execution of such lien, and which may ^thereafter be acquired by said company,” to secure the payment of moneys so borrowed and the interest accruing thereon: and said company may sell said bonds at less than -par.
By section 5, it is provided, that if the said company shall fail to complete the said railroad from the town of Fredericksburg, as far as Orange Courthouse, with a single track, of the quality and capacity therein described, and the depots therein mentioned, on or before the 1st day of May 1873, “the company shall forfeit to the State of Virginia, their corporate franchises and rights, together with their railroad track, road bed and all work and materials thereon, and other property, to hold the same as a trustee for the benefit of herself, the corporation of Fredericksburg and other private stockholders of the original Fredericksburg Railroad Company, according to the respective amounts of the stock in that company originally subscribed and held by them.”
Section 6 limits the power of the company in the issue of bonds, until after the road is fully completed to Orange Courthouse, to $600,000.
Section 7 provides that this act shall not be in force until the said company shall file in the office of the board of public works their acceptance of the same and its conditions, signed by the president and secretary of the company, with the common seal of the company affixed thereto. This condition, it is admitted by the pleadings, was complied with by the company.
On the first day of November 1872, the said company executed a mortgage or deed of trust, conveying all its property, real and personal, rights and franchises, to secure the payment of principal and interest of its bonds for $700,000, which the company determined *to issue. And for default in payment of interest, or principal, for ninety days after demand, the trustee, upon the written request of the holders of not less than twenty-five per cent, of the bonds then outstanding, is required to sell. The bill alleges that bonds of the aggregate par value of only $480,000 were issued; and that of them the plaintiffs became the purchasers, and the owners, of $323,000, secured by the mortgage.
The material question we are to consider is: Is the mortgage subject to the conditions of forfeiture prescribed by the said 5th section of the act of assembly?
The court is of opinion, that the railroad company, upon accepting the amendment and extension of its charter upon the terms of the said act of assembly, became immediately invested with authority to execute its bonds, and a deed of trust or mortgage upon its franchises and corporate rights, and upon the railroad track and road bed, and upon all its property, real and personal, to secure the payment of said bonds, principal and interest; but subject to its liability to the forfeiture of its said franchises and corporate rights, and its entire property, if the railroad was not completed from Fredericksburg to Orange Courthouse on or before the 1st of May 1873, as prescribed by the 5th section of the act. Though the authority to execute the bonds and the mortgage, in favor of the company, and the condition of forfeiture in favor of the state, are contained in different sections, they are both parts of the same act, and in fact constitute one contract; and must be taken and construed together as parts of a whole, so that, if possible, effect be given to the whole and to every part.
If the act should be construed as investing the company with the right to a lien or mortgage all its franchises, *rights and property, free from the right of the state to a forfeiture of the same, if the road was not completed within the prescribed time, the 5th section would be wholly inoperative. It gives no security to the state that the money authorized to be borrowed would be faithfully applied to the completion of the road, or that the road would be completed within the time limited, which seems to have been the cardinal object of the legislature in confirming the charter of this company and in extending and enlarging its franchises. What assurance could it give? The very property which is to be forfeited to the state, by the company on its failure to comply with the condition, becomes vested in others by the mortgage, and leaves nothing for the state. For it is very evident that the foreclosure of the mortgage by sale would leave nothing for the equity of redemption upon which the forfeiture could operate. But the idea that only the equity of redemption was to be subject to forfeiture is repugnant to the very terms of the act, which require the forfeiture, not of the equity of redemption, but of the identical subject which the 2nd section authorized to be conveyed in trust or mortgage. Such an idea is also incompatible with the last clause of the section, which provides that upon such forfeiture the State of Virginia shall have right to enter upon and take possession of said railroad track, road bed, &c., and hold the same as a trustee for the benefit of herself, the corporation of Fredericksburg, and the other private stockholders; which she could not do if the forfeiture was subject to the mortgage, and the railroad track, road bed, and all the property had been conveyed to others, and were liable any hour to be sold toward satisfying the mortgage. Taking both sections together, they must be construed to give *to the company the right to mortgage the property, subject to the state’s right of forfeiture, in case the road is not completed by the time specified. It is evident that the company so understood *412 it. No further evidence is needed, that it was so understood by both the company and the legislature, than the terms of the act of assembly of 26 March 1873, extending the time for the completion of the road, and the acceptance of that act by the company.
This construction gives effect to both sections; not to 2nd section as fully and effectually as it would by the omission of the Sth section. But that was not intended. The legislature did not intend to grant the privilege, except with this restriction. If the company did not regard it as beneficial they were under no constraint to take it. They must have regarded it as conferring a benefit, or they would not have accepted it. It is true the restriction if it were known (and the company was bound in common honesty to make it known) would embarrass the sale of the bonds. They could not be sold at all perhaps if thrown upon the market. No one could be induced t.o purchase who could not repose a personal confidence in the company that every dollar so raised would be strictly applied to the completion of the railroad in compliance with the terms of the charter, and thus save the forfeiture. If the bonds could be sold, and the money faithfully and honestly so applied, the security would be greatly strengthened, and the property and franchises saved from forfeiture, and the loan would be amply secure. A loan upon such security could only be effected through the personal confidence reposed in the company by the lender, or the purchaser of the bonds, that the money would be faithfully and honestly applied. And it may be that the ^company in accepting the act, calculated that they would be able to raise the money from those who knew them, and who would confide in them, that they ■ would honestly apply the money so raised as required by the law which authorized them to make the loan, and in a way that would give ample security to the holder of, the bonds. They could not have expected to raise the money by throwing the bonds upon the general market.
It would seem that they have not done so. The bill alleges that.bonds to the amount of about $480,000 were issued, of which they the plaintiffs are the owners and purchasers of $323,000. No claim is asserted to the residue. They do not say that they are purchasers for value. It does not appear that they were. If they were, what has become of the money. It does not appear that any part of it was expended upon the work on the railroad. The bill alleges that even the interest, although demanded, has not been paid, not a dollar of it, to save the road and all ,the corporate property of the company'and its franchises from sale under the mortgage. Could that be if there had been a bona fide sale of those bonds, for value — for money? Mr. Sillimhn, who claims to be the owner and purchaser individually of $139,000 of these bonds, is the president of the railroad company. And he and'Z. P. Boyer, who is one of the parties to whom the act of 21st of February 1872 was granted, claim to be the joint-owners of $23,000 more. The Miners Trust Company Bank and said Boyer claim to own together $93,500, and the Miners & Trust Company Bank claim to own, the appellees counsel say, $68,000. The amount does not clearly appear from the exhibit filed with the bill. But according to the statement of the bill it would be less. They are the plaintiffs in this *suit, and from their relations to this company and to- each other, are chargeable with notice of the terms of the act of assembly which authorized the execution of the mortgage or deed of trust, under which they claim. They are the holders of all the bonds to which any claim has been asserted in this suit. And if any money was received upon the sale of those bonds, the company being bound in all fidelity to apply it to the construction of the railroad and to the payment of the accruing interest on their debt, and it not appearing that one dollar from such source has been applied for the benefit of the railroad or the payment of interest, it raises a strong presumption, when we consider the relation of those who claim to be the owners and purchasers of the bonds to the railroad company and to one another, that the company has not received any money for said bonds.
The court is therefore of opinion that the appellants are not innocent purchasers for value, and holders of said bonds without notice of the provisions of the act of assembly by which the said company derived their authority to execute a mortgage to secure their payment, which was subject to forfeiture, if they failed to complete the road as far as Orange Courthouse, &c., by the time specified in the act. They may be presumed to have had actual notice of said restriction on the power of executing a mortgage. If they had not such notice it was their own fault. Persons dealing with corporations must take notice of whatever is contained in the law of their organization, and they must be presumed to be .informed as to the restrictions or conditions annexed to the grant of power, by the law bv which the corporation is authorized to act. Pearce v. Madison & Ind. R. R. Co., 2 How. U. S. R. 441; Zabriskie v. Cleveland R. R. Co., 23 How. U. S. R. 381. In *every instance (Mr. Justice Miller said, in delivering the opinion in which a majority of the court concurred, in the Floyd Acceptances case, 7 Wall. U. S. R. 680), a person making a contract with the government, through its. officers or agents, must look to the statute under authority of which the agent or officer professes to act, and see for himself that his contract comes within the terms of the law. The same rule would apply', a fortiori, to. persons making contracts with the agents or officers of bodies corporate. Mr. J. Miller further holds, in the above case, that the ontract by bill of exchange stands on no different footing, with reference to the authority of the officer to bind the government. And again, “one who takes a negotiable note or bill of exchange purporting to be *413 made by an agent, is bound to inquire as to the power of the agent.” (See also 31 Illinois R. 192; 42 Id. 273 ; 23 Barb. 10). In Clark v. City of Des Moines, 19 Iow. R. 209, the corporation is bound only when its agents keep within the limit of their authority. And again, “Negotiability will not validate obligations which are not binding for want of power to issue them. 23 N. Y. 464, 452; 1 A. L. Reg. (N. S.), 290.
Coupon bonds are put upon the footing of negotiable instruments, and are not liable, in the hands of an innocent holder, to the equities which attach to ordinary bonds. But their negotiability cannot enable the holder to subject property conveyed by deed of trust or mortgage for their security, which the grantor had no right to convey, or where he had a right to convey under restrictions, or conditions, no further than the restrictions or conditions will allow. Every purchaser of railroad bonds should look to the charter or statute, under authority of which they were issued and the mortgage was given to secure their payment.
*The court is of opinion, that no constitutional question is involved in this case with regard to the impairment of contracts. The construction given to the Sth section of the act, is a construction given to the contract itself; for it is a part of it, and a stipulation which is a part of a contract, though it may modify it, or make the contract different from what it would be without it, cannot be said to impair the obligation of the contract.
The court is also of opinion, that the company having failed to complete the railroad from Fredericksburg to Orange Courthouse, in the manner prescribed by the act of February 21st 1872, by the 1st of July 1873 (the extension of time allowed by the act of March 26, 1873), the forfeiture on that day became absolute and complete. And the state having entered and elected to hold to the forfeiture, “no inquisition, or judicial proceedings, or inquest, or finding of any kind, was required to consummate such forfeiture.” Staats v. Board, 10 Gratt. 400; Wild’s lessee v. Serpell, Id. 405; Hale v. Branscum, Id. 418.
Upon the whole, the court is of opinion, that there is no error in the decree of the Circuit court of Richmond, of the 2d day of July 187S, and that the same be affirmed.
Decree affirmed.
AGENCIES.
I. In General.
a. Kinds of Agencies-General and Special Agencies Defined. '
h. Liabilities of Principal In Each Kind Compared.
c. Ground of the Distinction.
d. Reason of the Rule.
e. How Created.
f. The Term “Agent” Defined.
g. Whom It Includes.
h. Delegation of Authority.
1. City Councils Cannot Delegate Their Authority.
2. Attorneys at Law Cannot.
i. Burden of Proof upon Party Affirming the Reía - tion.
j. Where Governments of the Parties Are at War.
II. Nature and Extent of Authority.
a. Parly Dealing with Agent Must Ascertain His Authority.
b. Presidents of Corporations — How Far Agents Ex Officio.
c. How Far Authority Goes.
d. Holding Out One as Agent.
e. Certain Powers Incident to Authority.
f. Instances of Lack of Authority.
g. Powers, etc., of Real Estate Agents.
h. Authority Necessary Generally — Sealed Instruments.
III. Manner of Executing Authority.
a. Agent Must Follow Instructions of Principal.
b. Joint Power to Be Exercised Jointly.
c. Manner of Entering into Contract — When Both
Agent and Principal Liable.
1. Instances.
IV. .The Relation as between Principal and Agent.
a. Fiduciary Character of the Relation.
b. Equity Will Compel an Account between.
c. Personal Representative of Principal May Have an Account of Agency in Equity.
d. Attorney Cannot'Purchase Client’s Property at Sale.
e. Instances That Show the Fiduciary Character of the Relation.
f. Compromises between Principal and Agent.
g. Agent Liable to Principal for Damages Where He Is Disobedient.
h. Conversion by Agent of Principal’s Goods.
i. Care Required by Agent without Reward.
j. What Agent to Receive Payment of Debt Due Principal in.
k. Principal Liable to Agent for Damages and Expenses Incurred in the Agency.
l. Agent Has Lien on Property of Principal, in His Possession for Advances, Labor, Expenses, etc.
m. Agent Not Responsible Where Goods Are Lost Not through His Fault.
n. Where Agent Is Unjustly Dismissed.
o. Agent Should Keep and Render Account of the Agency.
p. Agent Loses Right to Compensation by Neglecting the Agency.
V. Right and Liabilities between the Principal and Third Parties.
a. Special Agencies.
b. Principal Liable for Contracts of Agent— When.
c. Principal Liable for Negligence of Agent— When.
d. Principal’s Goods Not Liable for Agent’s Debts— May Trace His Property in Agent’s Hands.
e. Principal Not Responsible Where Credit Is Given to Agent.
f. Notice to Agent Notice to Principal — When.
g. Agents Dismissing Suit, without Authority, Does Not Affect Principal’s Right against Debtor.
h. Admissions and Declarations of Agent Bind Principal — When.
i. Enforcing Contract Made by Agent Where Third Person Is Party to Agent’s Fraud.
VI. Right and Liabilities between Agent and Third Parties.
a. Agent Not Generally Liable on Contracts Made on Principal’s Behalf.
*414 b. Agent Liable Personally for Torts Committed at Principal’s Command.
c. Agent Cannot Maintain Suit in His Own Name.
VII. Where the Principal Is Not Disclosed by Agent.
VIII. Ratification.
IX. Questions of Evidence.
X. Termination of the Relation.
I. IN GENERAL.
a. Kinds of Agencies — General and Special Agencies, Defined. — Agencies are commonly divided into two sorts — (1) a general agency; (2) special agency. A general agency properly exists where there is a delegation of authority to do all acts connected with a particular trade, business or employment. On the other hand, a special agency exists where the authority delegated is to do a single act. Thus, a person, who is authorized by his principal to execute all deeds, sign all contracts, or purchase all goods required in a particular trade, business or employment, is a general agent in that trade, business or employment. But a person, who is authorized by his principal to execute a particular deed, or to 'sign a particular contract, or to purchase a particular parcel of merchandise, is a special agent. Davis v. Gordon, 87 Va. 562, 18 S. E. Rep. 35.
b. Liabilities of Principal in Each Kind Compared. — In the case of a general agency, the principal will be bound by the acts of his agent within the scope of the general authority conferred on him, although he violates by those acts his private instructions and directions, which are given to him by the principal, limiting, qualifying, suspending, or prohibiting the exercise of such authority under particular circumstances. But, on the contrary, in the case of a special agency, if the agent exceeds the special and limited authority conferred on him, the principal is not bound by his acts, but they become mere nullities, so far as he is concerned; unless, indeed, he has held him out as possessing a more enlarged authority. Davis v. Gordon, 87 Va. 564, 13 S. E. Rep. 35.
c. Ground of the Distinction. — “The ground of this distinction, says Story," is the public policy of preventing frauds upon innocent persons, and the encouragement of confidence in dealing with agents. If a person is held out to third persons, or to the public at large, by the principal, as having a general authority to act for and to bind him in a particular business or employment, it would be the height of injustice, and lead to the grossest frauds, to allow him to set up his own secret and private instructions to the agent, limiting that authority; and thus to defeat his acts and transactions under the agency, when the party dealing with him had, and. could have, no notice of such instructions. In such cases, good faith requires that the principal should be bound by the acts of the agent, within the scope of his general authority; for he has held him out to the public as competent to do his acts, and to bind him thereby. The maxim of natural justice here applies with its full force, that he who, without intentional fraud, has enabled any person to do an act, which must be injurious to himself, or to another inno.cent party, shall himself suffer the injury rather than the innocent party, who has placed confidence in him. The maxim is founded in the soundest ethics, and is enforced to a large extent by courts of equity. Of course, the maxim fails in its application, when the party dealing with the agent has a full knowledge of the private instructions of the agent, or that he is exceeding his authority.” Davis v. Gordon, 87 Va. 564, 13 S. E. Rep. 35.
d. Reason of the Rule, — “A different rule would not only deter men from éver delegating power to others, and so put stop to factors and agencies in commerce, but also vest a most dangerous discretion in courts of justice to vary the agreements of parties.” The court in Stovall v. Commonwealth, 84 Va. 246, 4 S. E. Rep. 379.
e. How Created. — An agency may be created by express words or acts of the principal,' or it may be implied from his conduct and acquiescence. The nature and extent of an agency may be implied and inferred from circumstances. A common mode of appointment of an agent is by a written request, or by implication from the recognition of the principal, or from his acquiescence. Ruffner, Donnally & Co. v. Hewitt, Kercheval & Co., 7 W. Va. 585.
f. The Term “Agent” Defined. — “Any one who undertakes to transact some business, or to manage some affair for another, by authority and on account of the latter, and to render an account of it, is denominated an agent.” N. & W. R. Co. v. Cottrell, 83 Va. 517, 3 S. E. Rep. 123.
g. Whom ft Includes. — “The term agent is of very wide application, and includes a great many classes of persons to which distinctive appellations are given — as factors, brokers, attorneys, cashiers of banks, clerks, consignees, etc.” N. & W. R. Co. v. Cottrell, 83 Va. 517, 3 S. E. Rep. 123.
h. Delegation of Authority. — “An agent who has a bare power or authority must execute it himself and cannot delegate his authority to another.” Smith v. Lowther, 35 W. Va. 300, 13 S. E. Rep. 999. In this case the court held that a trustee in a deed of trust, when he sells must be present, and cannot delegate such authority to sell to another.
i. City Councils Cannot Delegate Their Authority.— Public powers or trusts devolved by law or charter upon the council or governing body of a municipal corporation, to be exercised by it when and in such manner as it shall deem best, cannot be delegated to a committee or others. M’Crowell v. City of Bristol, 89 Va. 652, 16 S. E. Rep. 867, cited and followed in Beal v. City of Roanoke, 90 Va. 77, 17 S. E. Rep. 738.
a. Attorneys at Law Cannot. — Counsel or attorneys to the record have now large powers in conducting the suits, and often concluding the interests of their clients. They are selected by parties for what are regarded as their ability, learning, integrity and fidelity, which are qualities of a personal character, and their duties and powers are not of a nature to be delegated to others by the attorneys who are first entrusted therewith. Others may, indeed, be requested or appointed by them to act in their place, but such appointment must first be authorized, or subsequently ratified, by the client, to give it validity. Ellis v. Heptinstall, 8 W. Va. 391.
i. Burden of Proof upon Party Affirming the Relation. — Where the maker of a note pays one not possessing the note, the burden of proving that such payee had authority to collect the money is on the debtor. Wooding v. Bradley, 76 Va. 614.
It is settled that in a case where plaintiff sues for specific execution of a purchase of land alleged to have been made by him from the agent of the owner, he must show, by evidence which is clear, competent, direct, and satisfactory, both the terms of the contract and the authority of the agent, or a ratification by the principal. Blair v. Sheridan, 86 Va. 527, 10 S. E. Rep. 414; Simmons v. Kramer, 88 Va. 411, 13 S. E. Rep. 902.
*415 J. Where Governments oí the Parties Are at War.— No agency can be created, where the governments oí the respective parties are engaged in hostilities with each other. Small v. Lumpkin, 28 Gratt. 832. Yet where agencies existed prior to the hostilities, and are for a lawful purpose, and can be and are exercised without any intercourse or communication between the parties — such as agencies to collect and preserve, but not to transmit money or property-war between the respective governments of the parties will not affect the agency. Small v. Lumpkin, 28 Gratt. 832, citing and following Manhattan L. Ins. Co. v. Warwick, 20 Gratt. 614. See also, King v. Hanson, 4 Call 259; Hale v. Wall, 22 Gratt. 424.
II. NATURE AND EXTENT OF AUTHORITY.
a. Party Dealing with Agent Must Ascertain His Authority. — In all cases a party contracting with an agent must enquire into his authority: and either a state or corporation is bound only when its agents keep within the limits of their authority. Silliman v. F. O. & C. R. R. Co., 27 Gratt. 119.
“Where a person deals with an agent, it is his duty to ascertain the extent of the agency; he deals with him at his own risk; the law presumes him to know the limit of the agent’s power; and if the agent exceeds his authority the contract will not bind the principal, but the agent.” Curry v. Hale, 15 W. Va. 875.
One dealing with an agent acting under written power is taken to deal with the power spread out before him. and must inspect it to see whether the agent’s act is authorized by the power. And where the agent is authorized to sell land, he cannot receive the purchase money, or sell on credit, unless specially authorized to do so. Dyer v. Duffy, 39 W. Va. 148, 19 S. E. Rep. 540.
“It is equally well settled that a party dealing with an agent acting under a written authority, must take notice of the extent and limits of that authority. He is to be regarded as dealing with the power before him; and he must at his peril, observe that the act done by the agent is legally identical with the act authorized by the power.” The court in Stainback v. Read & Co., 11 Gratt. 286.
b. Presidents of Corporations — How Far Agents Ex Officio. — The president of a corporation is not ex officio the agent of the corporation to sell property which it may direct to be sold; and unless appointed the agent to sell, his representations are not binding on the corporation. Crump v. U. S. Mining Co., 7 Gratt. 352.
The president of a bank has very little inherent power. But usage may confer upon him special functions. Hodge v. First Nat. Bank, 22 Gratt. 51.
The president of a bank has no authority, virtute officii, to make any admissions which will release the maker of a note to the bank from his legal responsibility created by such note. Hodge v. First Nat. Bank, 22 Gratt. 51.
A president of a bank may be authorized by the directors to do any act which they are authorized by their charter to do and such authority may be inferred from circumstances; such as that he was in the habit of doing acts of the same general character. The directors may ratify any unauthorized act of the president provided they could have by their charter authorized him to do it. The acceptance of the benefits of an unauthorized contract is such a ratification. First Nat. Bank v. Kimberlands, 16 W. Va. 555.
Presidents and cashiers of banks have only such powers as may be incident to their offices respectively, in their very nature, in the absence of anything in the charter to the contrary, and all other powers needful to the management of the concerns and business of the bank reside alone in the directory. Hodge’s Ex’or v. First Nat. Bank, 22 Gratt. 51, cited and approved in First Nat. Bank v. Kimberlands, 16 W. Va. 578.
c. How Far Authority Goes. — Says the court in Stainback v. Read & Co., 11 Gratt. 286, “It may be laid down as a rule of law, sanctioned alike by reason and authority, that a power of attorney given to an agent, to act in the name and on behalf of his principal, in the absence of anything to show a different intention, must be construed as giving authority to act only in the separate, individual business of the principal.”
d. Holding out One as Agent. — if in consequence of a notorious agency, the agent is in the habit of drawing bills, which the principal has regularly paid, this is such an affirmance of his power to draw, that the principal will be bound to pay other bills, though the agent should misapply the money raised by such bills. Hooe v. Oxley, 1 Wash. 20.
Where an insurance company furnishes one with all needful papers and blanks, responds to his acts, approves permits of removal by him, and pays his rent, they thereby hold him out to the public as their agent, and are responsible for his acts. Hardin v. Alexandria Ins. Co., 90 Va. 413, 18 S. E. Rep. 911. See also, Deitz v. Prov. Wash. Ins. Co., 31 W. Va. 851, 8 S. E. Rep. 616; Wytheville Ins. & Banking Co. v. Teiger, 90 Va. 277, 18 S. E. Rep. 195.
e. Certain Powers Incident to Authority. —Certain powers are necessarily incident to the authority of an agent; as an authority to sell land implies an authority to do every thing necessary to complete the sale and make it binding; as the signing of a contract for sale. Smith v. Tate, 82 Va. 665, citing and following Yerby v. Grigsby, 9 Leigh 390. Also a power of attorney by the owner of land appointing the attorney, “to protect all his interests in and title to the land,” is sufficient authority for the attorney to redeem the land for the owner from the purchaser thereof at a sale for delinquent taxes. Townshend v. Shaffer, 30 W. Va. 176, 3 S. E. Rep. 586. But an agent appointed to rent property or sell it at a stipulated price has no authority to divide the land or to rearrange the boundaries thereto. Fore v. Campbell, 82 Va. 808, 1 S. E. Rep. 180.
Sale of Personal Property — Implied Authority. — A general agent to sell personal property Is presumed to have power to make such warranties with reference to the property as are usual and customary in like sales in that locality. It is competent for the party relying upon such warranty to prove as a usage of trade, what warranties are usually demanded by the buyer and given by the agents of the seller in effecting sales of similar articles in that locality. A restriction upon the power of the agent to make the usual warranties in effecting like sales, of which the buyer has no notice or knowledge, is not binding on him. If there be evidence tending to prove what warranties are usually given by agents in effecting like sale, it is for the jury to determine whether, in the particular case, the agent was clothed with the requisite authority. Reese v. Bates, 94 Va. 321, 26 S. E. Rep. 865.
A general agent to sell is authorized to do whatever is Uvsualin the market to carryout the object *416 of Ms agency. But it is for the jury to determine upon the evidence what is usual. It is not necessary for the principal to have notice of the course of ■business. If such agent, in accordance with the usage of trade of the place of sale, gives a warranty of the quality of the goods sold, which is not in itself unjust to his principal, the latter will be bound by it, although ignorant of such usage. Reese v. Bates, 94 Va. 321, 26 S. E. Rep. 865.
Sale of Land — Authority to Receive Purchase Honey. —When the owner of land authorizes another to sell the same, the authority of the agent to receive so much of the purchase money as is- to be paid in hand, is a necessary incident to the power to sell. Yerby v. Grigsby, 9 Leigh 387. This case is severely criticised by Green, J., in Mann v. Robinson, 19 W. Va. 56, 42 Am. Rep. 771, which holds that where the owner of land authorizes an agent to mate a contract for the sale thereof, and it is done by the. agent, he has no authority as an incident to the authority conferred upon him to collect any portion of the purchase-money, which by the terms of the contract are to be paid at a future time. Mann’s Ex’rs v. Robinson, 19 W. Va. 49, but says Green, J., in the same case, “If the property be personal, the authority to sell for cash would carry with it generally the power and authority to receive the purchase money.”
Authority to Confess Judgment. — An agent authorized to confess judgment, may confess judgment with a stay of execution. Calwells v. Sheilds, 2 Rob. 305. He may also do so before the action is brought. Ins. Co. v. Barley, 16 Gratt. 363. It is not necessary that such agent or attorney in fact, be an attorney at law. Ins. Co. v. Barley, 16 Gratt. 363.
f. Instances of Lack of Authority. — Under a power of attorney, authorizing the attorney to act in every species of business wherein the principal may be concerned or interested in the United States, held, notwithstanding the broad terms of the power, the attorney is not authorized to pledge the property of his principal, to secure the individual debt of the attorney. Hewes v. Doddridge, etc., 1 Rob. 143.
A power of attorney to draw, endorse and accept bills, in the name of the principal, does not authorize the attorney to draw a bill in the joint names of himself and his principal. Stainback v. Read, 11 Gratt. 281. And also where authority is given to endorse for several jointly, the agent cannot bind the principals by endorsing severally. U. S. Bank v. Beirne, 1 Gratt. 234.
g. Powers, etc., of Real Estate Agents. — A real estate broker or agent is one who negotiates the sale of real estate. His business generally is to find a purchaser who is willing, to buy on the terms fixed by the owner. He has no implied authority to bind his principal by signing a contract of sale. Nor has he such authority to fix terms of sale, time of possession, nor the covenants to be contained in the deed. Nor can he materially change terms of sale fixed by the principal without his consent. He is a special agent, and must pursue his instructions and act within the scope of his limited power; and those who deal with him, if he exceeds his authority, do so at their peril. Halsey v. Monteiro, 92 Va. 581, 24 S. E. Rep. 258.
h. Authority Necessary Generally — Sealed Instruments. — The authority of the agent must be commensurate with the act he performs. So if the act of the agent is the execution of an instrument under seal, his authority to do so must be under seal. Preston v. Hull, 23 Gratt. 604; Penn v. Hamlett, 27 Gratt. 337. But he may do any thing else that the principal could do for himself under a parol authority. Piercy v. Hedrick, 2 W. Va. 458.
Making Insertions in Bond. — If an agent make insertions in a deed or bond, his authority must be under seal, to bind the principal. Preston v. Hull, 23 Gratt. 600.
III. MANNER OP EXECUTING AUTHORITY.
a. Agent Must Follow Instructions of Principal. — It is a well established rule of law that the agent must follow the principal’s instructions, so where the principal appoints an agent to buy grain, and the agent buys tobacco, the seller of the tobacco cannot recover of the principal. Hopkins v. Blane, 1 Call 362.
S gives G power of attorney to execute any bond, to theamountof $25,000.00, which the county courtmay require S to give for the faithful discharge of his duties as treasurer of said county. The court requires bond of $40,000.00 which G executes. Held, this is not the bond of S. Stovall v. Commonwealth, 84 Va. 246, 4 S. E. Rep. 379.
Agent Must Follow Principal’s Instructions — Exception. — There are exceptions to the rule of law that the agent must follow the principal’s instructions, or else be liable to the principal for any damages that the principal may incur by such disobedience. “With regard to instructions, there are two qualifications which are naturally and necessarily implied in every case of mercantile agency. The one is that they are applicable only to the ordinary course of things. And the agent will be justified in cases of unforeseen emergency, in deviating, from them." Anderson, J., in Bernard v. Maury, 20 Gratt. 434.
b. Joint Power to Be Exercised Jointly. — A joint power to several persons must be jointly exercised. Union Bank v. Beirne, 1 Gratt. 226.
c. Manner of Entering into Contract — When Both Principal and Agent Liable, — “When a contract is made by an agent, the question whether the principal or agent, or both, are liable, is, generally, a question of intention. The principal alone is liable if the facts are all known, and there is no special reason for holding the agent liable, or an intention to make him liable is not plainly indicated by the form of the contract or otherwise. The contract is made for the principal’s benefit, is in fact the principal’s contract, by the procuration of the agent, and it is just and right that the principal, and not the agent, should bear the burthen directly as he must ultimately, unless there be some good reason for the contrary. The agent is never liable unless it appear to have been intended by the parties to the contract that he should be liable; always presuming of course that the agent has strictly pursued his authority; for if he has not, he is personally liable. When the contract is by parol, an intention to make the agent liable must appear from the facts and circumstances of the case, as they are shown in evidence. When the contract is in writing, an intention to make the agent liable, must appear on the face of the writing, or from the language therein used; and if such intention so appear, parol evidence to show the contrary is inadmissible; upon the familiar principle that parol evidence is inadmissible to vary or contradict a written contract.” Moncure, J., in Walker v. Christian, 21 Gratt. 293.
Government Agents. — A public officer, contracting on the part of government, is not personally liable. Syme v. Butler, 1 Call 105, approved and followed in Tutt v. Lewis, 3 Call 233. See also, Walker v. Christian, 21 Gratt. 293.
*417 “A very different rule, in general, prevails in regard to public agents; form the ordinary course of things, an agent, contracting in behalf of the government, or of the public, is not personally bound by such a contract, even though he would be by the terms of the contract, if it were an agency of a private nature. The reason of the distinction is that it is not to be presumed, either that the public agent means to bind himself personally in acting as a functionary of the government, or, that the party dealing with him in his public character means to rely on his individual responsibility. On the contrary, the natural presumption in such cases is, that the contract was made on the credit and responsibility of the government itself, as possessing an entire ability to fulfil all its just contracts far beyond that of any private man; and that it is ready in good faith to fulfil them with punctilious promptitude, and in a spirit of liberal courtesy. Great public inconveniences would result from a different doctrine, considering the various public functionaries, which the government must employ, in order to transact its ordinary business and operations; and many persons would be deterred from accepting of many offices of trust under the government if they were held personally liable upon all their official contracts.” The court by Moncure, J., in Walker v. Christian, 21 Gratt. 297.
i. Instances. — in Early v. Wilkinson, 9 Gratt. 68, a note signed
‘’Robert H. Early,
[Por Sam’l H. Early.]”
was held to be the note of Robert H. Early.
In Exchange Bank v. Lewis County, 28 W. Va. 273, the court held that a note signed “James Bennett, Agent for Lewis County,” tobe the individual note of James Bennett. The conrt going further says, “The best mode for an agent to sign a note for his principal, so that it may clearly appear he is the mere scribe of the principal, isas follows: “A. B. by his attorney or agent C. D.,” or “A. B. by C. D.”
A deed for the conveyance of land, purporting to be made by A. attorney in fact for B. witnesses “that the said attorney in fact, A. for and in consideration etc., doth release and quitclaim etc.,” and concludes “in testimony whereof the said B. hath hereunto set his hand and seal,” but is signed with the name of A. (not styled attorney) a scroll being annexed to tbe signature.
CabeuIj, J., in holding that such deed was not the deed of B. says: “The legal title to land cannot pass from him who has it, but by his deed. Such deed may be executed by his attorney duly authorized for the purpose. But it must be so executed as to be the deed of the principal. It is not sufficient, therefore, that it shall be executed by the person who was authorized to make it; but it must be done by him as attorney. For this purpose it is necessary that the attorney shall either sign the name of the principal, with a seal annexed, stating it to be done by him as attorney for the principal; or he may sign his own name, with a seal annexed, stating it to be for the principal. In either of these forms, the deed becomes the deed of the principal; and if every thing else be correct, it conveys the title of the principal. But if the deed be signed and sealed by the attorney, neither in the name of the principal, nor in his own name as attorney, for the principal, it is not the deed of the principal.”
In Rand & Minsker v. Hale, 3 W. Va. 495, Hale was sued on a draft, drawn by Chas. F. Hale, Pres’t, as president of the Forest Hill Mining & Manf. ' Co. in payment of grain, etc., delivered to said company by the plaintiffs. Brown, P., in holding Hale personally liable on the draft said: “The learned counsel for the defendant has argued with force and ingenuity to show that upon the case made, the Forest Hill Mining and Manufacturing Company was liable. However that may be, it is not necessary to the determination of this case, nor is it the inquiry we are called on to investigate. The true question is, whether or not the defendant is liable. And after a careful consideration of the subject and a review of the authorities cited in the argument, I am led to the conclusion, without hesitation or doubt, that the defendant was liable personally on the bill of exchange, which as between him and the holder is his own individual contract and undertaking; mother words, it purports on its face to be the order of the defendant and the addition of the word ‘Pres’t’ to his signature does not shift the responsibilities from him to the company of which he was the president, so far as the plaintiffs are concerned.”
M gives to J a power of attorney to sell her lands in the county of R, with power to J to appoint other agents or attorneys. J executes a power to C to sell the lands, but the power only authorizes C to act in the name of J, and it is signed by J in his own name, without any reference to his principal. This power does not authorize C to convey the land as attorney of M. Stinchcomb v. Marsh, 15 Gratt. 202.
While the courts should generally refuse to allow a recovery against one person on a negotiable instrument made by another, on proof that the latter was acting as his agent, yet a person may make the signature of another his own by using, or allowing it to be used as such in the course of his business, and that he will and should, under such circumstances when clearly proved, be as much bound as if his own name was affixed to the bill or other negotiable instrument in question. Devendorf v. West Virginia Oil and Oil Land Company, 17 W. Va. 135.
“A person owning land may by parol authorize another to make a contract for the sale thereof; and if a contract be made under such authority, . the owner of the land may be charged by virtue of the contract, provided there be a memorandum thereof in writing signed by the person authorized to make it. The signing by the agent of his own name is sufficient. The statute does not make it indispensable, that he should sign the name of the party to be charged therewith.” The court in Conaway v. Sweeney, 24 W. Va. 649, citing Yerby v. Grigsby, 9 Leigh 387.
“It is a sufficient execution of a deed by an attorney in fact tor his principal, if he signs the name of the principal with a seal annexed, stating it to be done by him as attorney for the principal; or if he signs his own name with a seal annexed, stating it to be for the principal.” The court in Shanks v. Lancaster, 5 Gratt. 110, 119.
The signing by the agent in his own name is sufficient. Yerby v. Grigsby, 9 Leigh 387.
IV. THE RELATION AS BETWEEN PRINCIPAL AND AGENT.
a. Fiduciary Character of the Relation. — The relations of principal and agent, attorney and client, come under the equitable doctrine that any person who occupies a fiduciary relation to another, is bound not to exercise to the benefit of himself and to the prejudice of the party, to whom he stands in such relation, any of the powers or rights, or any knowl *418 edge or advantage of any description which he derives from such confidential position. Newcomb et al. v. Brooks et al., 16 W. Va. 58, citing Carter, etc., v. Harris, 4 Rand. 204; Buckles v. Lafferty, 2 Rob. 292; Segar v. Edwards, 11 Leigh 213.
b. Equity Will Compel an Account between. — Where the agency is of a fiduciary character, a bill in equity will lie on behalf of the principal to compel the agent to give an account. Zetelle v. Myers, 19 Gratt. 62, cited and followed in Merchants’ Bank v. Jeffries, 21 W. Va. 504. See also, Berkshire v. Evans, 4 Leigh 223; Coffman v. Sangston, 21 Gratt. 263.
c. Personal Representative of Principal Hay Have an Account of Agency in Equity. — A bill in equity will lie, by an administrator of a principal, against the general agent of his intestate for a discovery and an account of the transactions of the latter with his principal. Simmons v. Simmons, 33 Gratt. 451, cited and followed in Huff v. Thrash, 75 Va. 546; Vilwig v. B. & O. R. R. Co., 79 Va. 449.
d. Attorney Cannot Purchase Client’s Property at Sale. — “If a client’s property real or personal is sold in the process of a suit, his attorney cannot be permitted to purchase it without the express consent of ‘the client.’’ Green, J., in Newcomb et al. v. Brooks et al., 16 W. Va. 69.
And if he does so, such purchase will be properly set aside even if it is made atan auction sale, for full value, and by perfectly fair means. Newcomb v. Brooks (supra).
An agent employed to look after and rent the 'land of another, who is a non-resident, cannot allow the property to be returned delinquent for taxes, and then buy the property himself at the tax sale. Morris v. Joseph, 1 W. Va. 256.
e. Instances That Show the Fiduciary Character of the Relation. — The following instances show how zealously the courts protect the interests of the principal, how they view the whole transaction, and set it aside, at the merest suspicion that the agent' is using the agency for his own interests and not in furtherance of those of his principals.
Loyalty to his trust is the most important duty which an agent owes to his principal. The dealings of an agent with his principal are closely scrutinized, and the voidable acts of the agent will not be deemed to have been confirmed by the principal except after the fullest disclosure by the agent. Confirmation must be a solemn and deliberate act of the principal, after full disclosure by the agent. If the principal’s right to impeach a transaction be concealed from him, or a free disclosure be not made to him of every circumstance which is material for ‘ him to know, or if confirmation takes place under pressure or constraint, or by the exercise of undue influence, or under the delusion that the original transaction is binding on him, or if it be merely a continuation of the original transaction, the confirmation amounts to nothing. Francis v. Cline, 90 Va. 201, 31 S. E. Rep. 10.
An agent to buy or sell, or to act in any other business, will not be permitted to make profits for himself out of the transaction. All profits or advantages made, or contracted for by him in the business, beyond the ordinary compensation to be paid by his principal, enure to the benefit of his principal. And this rule applies equally to promoters of a corporation who, like agents, occupy a fiduciary relation to the new corporation. Central Land Co. v. Obenchain, 92 Va. 130, 22 S. E. Rep. 876.
An agent to sell cannot become a purchaser, except after the fullest disclosure to his principal of all facts which may affect his interest. The relation between the parties is one of trust and confidence, and the utmost good faith is exacted of the agent. He cannot sign a contract for the sale of the principal’s land when he is hiinself interested as purchaser. If such contract be made by the agent, the principal will not be held to a ratification thereof, except after full'knowledge of all the material facts. If these be either suppressed or unknown, the ratification will be treated as invalid, because founded on fraud or mistake. Halsey v. Monteiro, 92 Va. 581, 24 S. E. Rep. 258.
An agent employed to buy cannot himself become the seller.. See Colbert et al. v. Shepherd, 89 Va. 411, 16 S. E. Rep. 246.
An agent employed to sell cannot himself become the purchaser. Colbert et al. v. Shepherd, 89 Va. 401, 16 S. E. Rep. 246, citing Lamar v. Hale, 79 Va. 158; Statham et als. v. Ferguson’s Adm’r et als., 25 Gratt. 40.
In Moseley’s Heirs v. Buck et al., 3 Munf. 232, a sale to agents was rescinded where it was proven, that the agents assured their principal, the vendor, that the land would not bring more than a certain price per acre, when in fact the principal had been offered more, through his agents, who concealed such offer from him.
B was an agent for the sale of a tract of land, and concealed from his principal the knowledge which he had acquired as such agent respecting the price at which the land could be sold, and taking undue advantage of his position as agent purchased the land from the principal, who was then ignorant of material matters affecting the value thereof at that time, and sold it for a much larger sum. Meld, that it was the duty of B to have disclosed to the principal his knowledge thus acquired before he made such purchase, and that he must account to the principal for the sum he received for the land, over and above the amount paid by him to the principal. Bell v. Bell, 3 W. Va. 183.
Where an attorney or agent undertakes the collection of a claim for his client or principal and, while such relation exists, buys the claim from his principal, whether false representations were made or not to induce the principal to sell his claim, or even if the claim was sold for an adequate price, the sale is voidable at the option of the principal. Lane v. Black, 21 W. Va. 618.
An agent authorized to purchase land for his principals, purchases in his own name, and takes a conveyance to himself.' He is bound to convey the land to his principals, upon their complying with the terms of his contract of purchase, in the same plight and condition in which the same was conveyed to him. If the agent has disposed of a part of the land purchased, so that the principals cannot obtain that part, the agent will be held to account for the same at its true value at the time when it should have been conveyed to his principals. Wellford et als. v. Chancellor, 5 Gratt. 39.
An agent may deal directly with his principal, and sell to him property he was employed to buy for him, provided he makes fair and full disclosure to his principal of all the facts and circumstances within his knowledge in any way calculated to enable his principal to judge of the propriety of the transaction, and there is no deception or concealment on the part of the agent; and, in a contrqversy between a principal and his agent over the validity of such an agreement, the burden of proof is on the agent to show such disclosure, and the perfect fairness of the *419 transaction. Jackson v. Pleasonton, 95 Va. 654, 29 S. E. Rep. 680.
The general rnle is that an agent may not act for "both parties. Neither can he he hoth hnyer and seller. See Segar v. Edwards, 11 Leigh 213.
A man cannot he the agent of hoth the hnyer and the seller in the same transaction, without the intelligent consent of hoth parties; nor can an agent act for himself and his principal, nor for two principals on opposite sides in the same transaction, without like consent. All such transactions are voidable, and may he repudiated hy the principal without proof or injury on his part. Nothing will defeat this right o± the principal except his own confirmation after full knowledge of all the facts. The object of this principle is to remove all possible temptation 'from the agent. Ferguson v. Gooch, 94 Va. 1, 26 S. E. Rep. 397.
f. Compromises between Principal and Agent. — It is competent for a principal and agent to compromise a controversy between them; and such compromise, if fairly made with a full knowledge of all the facts, and where no undue influence is exerted, or improper advantage of the situation of the principal is taken, hs binding on the principal, though he may hy such compromise, yield a portion of his rights. But if the agent misrepresents a material fact, the compromise will he vacated; and this especially, where advantage is taken of the circumstances of the principal. Wellford et als. v. Chancellor, 5 Gratt. 39.
g. Agent Liable to Principal for Damages Where He Is Disobedient. — If an agent having sold goods belonging to his principal, he ordered hy him while they are yet in transitu, not to deliver them to the hnyer, whose solvency he doubts, and the agent nevertheless delivers the goods, without demanding indemnity, he is liable to the principal for any loss that the principal may incur hy reason of such delivery. Howatt v. Davis, 5 Munf. 34; Ruffner, etc., Co. v. Hewitt, etc., Co., 7 W. Va. 585.
If the agent unnecessarily exceeds his commission, or risks the property of his principal, he thereby renders himself responsible to his principal for all losses ,and damage which are the natural consequences of his act. Buffner, Donnally & Co. v. Hewitt, Kercheval & Co.. 7 W. Va. 586.
h. Conversion by Agent of Principal’s Goods. — In McVeigh v. Bank, etc., 26 Gratt. 188, the president of a hank, which had suspended operations owing to the war, collects money owing the hank, tries to lend it out for the hank, hut fails, invests it with some of his own in tobacco, which speculation turns out had. Held, he is regarded as a borrower of the amount, and must make it good, although as the court says, “We see no reason to impute any blame to the defendant. He seems to have acted throughout with a conscientious regard for what he considered the best interest of the hank. But his motives, however conscientious, cannot exonerate him from liability for the collection and appropriations of money belonging to the plaintiff.”
i. Care Required by Agent without Reward.— An agent without reward will not he required to use more diligence than would he used by a prudent man in the management of his own affairs. Pate v. M’Clure, 4 Rand. 164.
j. What Agent to Receive Payment of Debt Due Principal in. — An agent authorized to collect a debt can receive payment thereof in money only, and he has no right to accept anything else in satisfaction witliout express authority from his principal, and if he does, it will he no payment, unless ratified or assented to hy the principal. Mann’s Ex’rs v. Robinson, 19 W. Va. 49, citing and following Wilkinson v. Holloway, 7 Leigh 284; Wiley v. Mahood, 10 W. Va. 221.
Confederate States treasury notes were not such money as an attorney could receive in payment of his client’s note, the principal being a citizen of the United States at the time. Harper v. Harvey, 4 W. Va. 539.
It may he conclusively inferred from facts and circumstances shown in evidence, that an attorney during the late civil war, was authorized hy his client, to receive payment on a claim in his hands, in Confederate money, all the parties being and residing at the time within the Confederate lines. Ellis v. Heptinstall, 8 W. Va. 388.
A was attorney for C, in West Virginia, 'before the late war. At the beginning of the war A’j'oined the Confederate army. Held, the relation’ of agency ceased. Harper v. Harvey, 4 W. Va. 539.
An attorney at law employed to collect'a debt may receive payment in money, hut ha.s no right to accept anything else in satisfaction, withdiit express authority. Wilkinson & Co. v. Holloway, 7 Leigh 277; Smock V. Dade, 5 Rand. 639; Smith’s Adm’r v. Lamberts, 7 Gratt. 138; Harper, Adm’r, v. Harvey et al., 4 W. Va. 539; Wiley v. Mahood et al., 10 W. Va. 221; Spence v. Rose, 28 W. Va. 333.
An agent, with authority to collect a note of his principal which is payable in money, has ho'authority to receive in payment of such note anything but money. If in such case the agent rfeceiv-és from the debtor notes or claims on a third party'ih payment of such note, that will not constitute a! payment unless the claims so received are actually’collected by the agent. Spence v. Rose, 28 W. Va. 333.
k. Principal Liable to Agent for Damages’ and Expenses Sncurred in the Agency. — If an agent,has. without his own default, incurred losses or damages in the course of transacting the business ox his agency, or in following the instructions of his principal, he will be entitled to full compensation. Ruffner, Donnally & Co. v. Hewitt, Kercheval & Co., 7 W. Va. 586.
Generally, it is the right of an agent 'to be reimbursed for all his advances, expenses, and’disbursements, made in the course of his agency,1 on account of or for the benefit of his principal, when the advances» expenses and disbursements'have been properly incurred and reasonably and in ‘ good faith paid, without any default on. the part of the agent. Ruffner, Donnally & Co. v. Hewitt, Kercheval & Co., 7 W. Va. 585.
l. Agent Has Lien oti Property of Principal in His Possession for Advances, Labor, Expenses, etc. — An agent with unrestricted management of a mercantile farming and general trading business, carried on in his name, with the right to buy, sell, and exchange, has a lien on all the property,accumulated in such business, and in his possession,, for all advancements made, expenses and liabilities incurred, proper, necessary, or incident to §uch business, which is superior in right to any lien which may be created on such property by the reputed owner thereof; and while he may not, without the consent of those interested, transfer or assign such lien to another, yet he has the right to sell a sufficient amount of such property to satisfy such liabilities, or may transfer the possession thereof to a trustee, tobe held by him until such liabilities are fully discharged, and the lien thereby extinguished.
The possession of the trustee under such circum *420 stances is the possession of the agent, and the lien is not released or waived.
Such trustee, with the consent of the interested parties, may sell the property and extinguish the lien. Dewing et al. v. Hutton et al., 21 S. E. Rep. 780, 40 W. Va. 521.
m. Agent Not Responsible Where Goods Are Lost Not through His Fault. — Money received by an executor during the war, belonging to a citizen of Indiana, was confiscated by the Confederate government. HeId, the Confederate government in the exercise of her belligerent rights, had authority to confiscate the property of alien enemies, and the executor is not responsible for the money confiscated. Newton’s Ex’or v. Bushong et al., 22 Gratt. 628, 12 Am. Rep. 553.
If the person with whom bonds are left for collection puts them into the hands of a lawyer to collect, he is not further responsible, except for moneys received from the lawyer. Hawkins v. Minor, 5 Call 118.
n. Where Agent Is Unjustly Dismissed. — As to the remedies of a servant or agent unjustly dismissed, see 1 Minor’s Inst. (4th Ed.) 212 et sea., but this subject comes more properly under the law of master and servant. W contracts with T to hire his services for a year for a fixed sum. In the course of the year W dismisses T from his employment without sufficient cause for the dismissal. It is error to hold that T, if entitled to .recover at all upon the contract, is entitled td''redover"the hire or wages for the whole year. His right of recovery, in case of a discharge without cause, should be limited to the amount of damages actually sustained by such illegal discharge. Willoughby v. Thomas, 24 Gratt. 521, cited and approved in Crescent Horse-Shoe Co. v. Eynon, 95 Va. 160, 27 S. E. Rep. 935.
In estimating the damages incurred by the servant, by reason of his wrongful discharge, it is error to take into consideration other elements of damage than those which were caused by his dismissal. Crescent Horse-Shoe Co. v. Eynon, 95 Va. 151, 27 S. E. Rep. 935.
In order ..ta..r.e,cover special damages the agent must allege them; he cannot recover special damages under a general count or ad damnum claim of damages. Lee v. Hill, 84 Va. 919, 6 S. E. Rep. 473.
That the servant does not do his work in a reasonably skilful manner is, sufficient cause for dismissal. But reasonable skill is all that is required, unless the servant holds himself out as having a higher degree of skill. Crescent Horse-Shoe Co. v. Eynon, 95 Va. 151. 27 S. E. Rep. 935.
o. Agent Should Keep and Render Account of the Agency. — It is, ordinarily, the duty of an agent where the business in which he is employed admits of it,'.or..'requires it, to keep an account of all his transactions.on'behalf of his principal, not only of his payments and disbursements, but also of his receipts; and render such accounts to his principal, at all reasonable times, without any suppression, concealment or overcharge. Ruffiner, Donnally & Co. v. Hewitt, Kercheval & Co., 7 W. Va. 586.
p. Agent Loses Right to Compensation by Neglecting the Agency. — Says the court in Segar v. Parrish, 20 Gratt. 681, “However solvent agents and trustees may be, or however honest may be their intentions, if they deliberately retain trust funds in their own hands, appropriate them to their own private use, and refuse or fail for years to render any account to their principals, they should be held to forfeit all claim for compensation. Any other rule is a premium for negligence and an encouragement to persons occupying relations of trust and confidence, to retain money not their own.”
V. RIGHT AND LIABILITIES BETWEEN THE PRINCIPAL AND THIRD PARTIES.
a. Special Agencies. — The principal is not generally responsible if the agent goes beyond his power in a special agency. Stovall v. Com., 84 Va. 246, 4 S. E. Rep. 379; Hopkins v. Blane, 1 Call 362; Davis v. Gordon, 87 Va. 559, 13 S. E. Rep. 35; Fore v. Campbell, 82 Va. 808, 1 S. E. Rep. 180.
b. Principal Liable for Agent’s Contracts within the Scope of His Authority. — The general rule is that the principal is liable for the contracts of the agent, made within the scope of his authority. Yerby v. Grigsby, 9 Leigh 387; Hopkins v. Blane, 1 Call 361; Spence v. Rose, 28 W. Va. 333.
c. Principal Liable for Negligence of Agent — When.— Where an agent acts negligently in the regular course of his employment, the law is well settled, that the principal must bear the consequences of his agent’s negligence, as between himself and an innocent third person, even though the act or omission of the agent, which constitutes the negligence, was wholly unauthorized by the principal or even positively forbidden by him. De Voss et als. v. City of Richmond, 18 Gratt. 338, 359.
Never Liable Criminally. — The principal will not generally be liable criminally for the negligence or acts of the agent. Lewis v. Commonwealth, 4 Leigh 664. In which case it was held that a sheriff was not criminally responsible for the act of his deputy in allowing a prisoner to escape.
Public Officers Not Liable for Subordinate’s Default.— A public officer is not responsible to third persons for the negligence or default of his official subordinates. Sawyer v. Corse, 17 Gratt. 230. It is otherwise if such subordinate is not an official, but a private agent. Sawyer v. Corse, 17 Gratt. 230.
Insurance Companies. — An insurance company establishing a local agency, must be held responsible to the parties with whom they transact business, for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal. Cont. Ins. Co. v. Kasey, 25 Gratt. 268.
Instance. — If A give a power of attorney, in due form, to B, authorizing him “to draw checks, indorse notes, and generally to do all and every act and deed, towards the execution of his business at a certain bank;” and deposit the said .power in the bank, to be inspected, when called for, by any person interested in matters relating thereto; he is bound to make good, to a bona fide purchaser for valuable consideration, any indorsement of a note negotiable at the said bank, which B may make in his name as his attorney; notwithstanding the real object of the said power, verbally declared at the time of its execution, was to authorize B to renew certain accommodation paper then in bank, and not to indorse any other paper. Mann v. King, 6 Munf. 428.
d. Principal’s Goods Not Liable for Agent’s Debts— May Trace His Property in Agent’s Hands. — A party whose entire business consists in selling agricultural implements, wagons, etc., as agent for the manufacturer thereof, receiving a commission for his services in disposing of the same, cannot be regarded either as a trader or a commission merchant; and although his name, with the addition of the words “M’f’rs Agent,” be on a sign nailed on the outside of the building in which he does business, in a conspicuous place, farming implements which he *421 has on sale as an agent for the manufacturer are not liable to execution and sale as his property, under the provisions of section 13 of chapter 100 of the Code of West Virginia. Brown Manuf’g Co. v. William Deering & Co., 13 S. E. Rep. 383, 35 W. Va. 255.
Says the court in Overseers of the Poor v. Bank of Va. et als., 2 Gratt. 548. “The well-settled principles of law entitle a principal, in all cases where he can trace his property, whether it he in the hands of the . agent, or of his representatives, or assignees, to reclaim it, unless it has been transferred bona fide to a purchaser of it, or assignee for value, without notice. In such cases, it is wholly immaterial whether the property be in its original state, or has been converted into money, securities, negotiable instruments or other property; if it be distinguishable, and separable from the other property or assets; and has an earmark, or other appropriate identity. The product, or substitute of the original thing, has the nature of the original thing itself imparted to it, as long as it can be ascertained to be such product, or substitute; and the right of the principal thereto ceases only when the means of ascertainment fail; and this is the case when the .subject is turned into money, and is mixed and confounded in a general mass of the same description, and becomes incapable of being distinguished from the mass of the moneys of the agent.”
e. Principal Not Responsible Where Credit is Given to Agent. — c, president of a railroad company, and A, agent of the company, borrow money from H, and give their own bond for it. The money is borrowed for the use of the company, which is itself without credit, and it is immediately turned over to the company. G and A become insolvent. Held. the money having been loaned to O and A individually, with the knowledge that it was for the use of the company, and II having chosen to take the responsibility of C and A, cannot afterwards make the company his debtor. Strider v. Winch. & Pot. R. R. Co., 21 Gratt. 440.
f. Notice to Agent Notice to Principal — When. — It may be stated as a general rule that notice to the agent while acting in the scope of his authority is notice to the principal. Hart et al. v. Sandy et al., 39 W. Va. 644. 20 S. E. Rep. 665. citing French v. Loyal Co., 5 Leigh 680, 715; Newlin v. Beard et al., 6 W. Va. 111, and Fidelity Ins., etc., Co. v. Shenandoah Val. R. Co., 32 W. Va. 244, 9 S. E. Rep. 180; Simmons v. Ins. Go., 8 W. Va. 474.
But such notice must have reference to that business of the principal, in which the agent is engaged. Hart v. Sandy, 39 W. Va. 644, 20 S. E. Rep. 665.
g. Agents Dismissing Suit without Authority Does Not Affect Principal’s Right against Debtor, — A special agent who is authorized to dismiss the suit of his principal only on special terms designated in writing transgresses his authority in dismissing the suit on any other terms, without the knowledge of his principal, and the right of the principal to prosecute a new suit for the same debt, and to recover judgment therefor against principal and surety is unaffected by such dismissal. Winfree v. First Nat. Bk. of Lexington, 97 Va. 83. 33 S. E. Rep. 375.
h. Admissions and Declarations of Agent Bind Principal — When.—The admissions of an agent bind the principal only while the transaction is going on. They must be made dum fervet opus, if made after-wards they are mere hearsay. Lake v. Tyree, 90 Va. 719, 19 S. E. Rep. 787.
Must Be within Scope of His Authority. — An insurer is responsible not only for the acts and declarations of its general agents, within the scope of their authority, but also for the acts and declarations of the clerks and employees of such agents, to whom the latter delegate authority to discharge their functions, within the scope of the agent’s authority, and while engaged about the business of the principal. Goode v. Georgia Home Ins. Co., 92 Va. 392, 23 S. E. Rep. 744.
i.Enforcing Contract Made by Agent Where Third Person Is Party to Agent’s Fraud. — A purchaser from an agent empowered to sell real property, cannot insist on the validity of such sale, if he had knowledge of any fraud or breach of trust in the agent. Morris v. Terrell, 2 Rand. 6.
VI. RIGHT AND LIABILITIES BETWEEN AGENT AND THIRD PARTIES.
a. Agent Not Generally Liable for Contracts Made on Principal’s Behalf. — An agent who fully discloses his agency and the name of the principal, and contracts only as the agent of his principal, incurs no personal responsibility. While he may bind himself personally, the presumption is otherwise, and the burden of proof is on him who undertakes to establish the agent’s personal liability. In the case at bar, it is clear that the agent contracted for a disclosed principal, and that credit was extended to the principal. The benefits of the contract were accepted by the principal, and there is no personal liability on the agent. The mere fact ‘that the plaintiff instituted a suit on the contract against the agent, which suit has never been prosecuted, cannot relieve the principal from liability on the contract. In this case there were not “two concurrent debtors for the same debt.” Richmond, etc., Ry. Co. v. N. Y., etc., Ry. Co., 95 Va. 386, 28 S. E. Rep. 573.
b. Agent Liable Personally for Torts Committed at Principal’s Command — When.—“The command of the principal will not justify the agent in committing a trespass, nor even an apparent wrong; in such a case, both the principal and agent are liable to the party injured. But where the conduct of the agent is within the limits of the authority confided to him, is fair, and unattended by circumstances sufficient to apprise him that he is acting wrongfully in relation to others; or, in other words, where he does not commit an apparent wrong, the principal and not the agent is responsible for the act.” Cabell, J., in Travis v. Claiborne, 5 Munf. 438.
The agent may recover of the principal any damages he may incur, by reason of the commission of a tortious act, by the principal’s direction, provided that the agent acted in good faith and. the honest belief that it was lawful for him to do such act. See cases gathered in Lile’s Notes to 1 Minor’s Inst. (4th Ed.) p. 31.
In Travis v. Claiborne, 4 Munf. 435. the agent was not responsible to the trustee for the conversion of a slave, held by his principal under a deed of trust, where the agent had no notice of such deed.
c. Agent Cannot flaintain Suit in His Own Name. — An agent or attorney in fact cannot maintain a suit in his own name, not even in a court of equity. Jones v. Hart, 1 H. & M. 471.
VII. WHERE THE PRINCIPAL IS NOT DISCLOSED BY AGENT.
Generally. — “When one contracts as agent, without naming a principal, his acts enure to the benefit of the party, although at the time uncertain and unknown, *422 for whom it shall turn out that Re intended to act, provided tRe party tRus entitled to Re principal ratify tRe contract. And wRere tRe credit is given solely to tRe servant, if it Re in ignorance of wRo tRe principal is, altRougR witR knowledge tRat tRe servant is acting on ReRalf of anotRer, and mucR more if witRout sucR knowledge, tRe principal, wRen discovered,- is liaRle. And parol evidence is admissible to sRow who is tRe principal when Re is undisclosed Ry the contract in order to Rave the benefit thereof or to Re charged therewith; and in such case the principal is Round in addition to the agent, for the agent is Round also Ry the terms of the contract.” TRe court in Waddill v. Sebree, 88 Va. 1015, 14 S. E. Rep. 849.
Party May Abandon Right against Agent and Look to Principa!. — WRere a person dealing with anotRer, finds out 'that such party istoot dealing for himself, Rut merely as agent for anotRer, Re may abandon Ris right against the agent and look to the principal. Poole & Co. v. Rice, 9 W. Va. 78.
Agent Always Responsible. — “It is well settled that a person contracting as agent will Re personally responsible, where, if at the time of making the contract, Re does not disclose the fact of Ris agency.” Green, J., in Poole & Co. v. Rice, 9 W. Va. 73. In such a case the principal is also liable.
Contract Not under Seal — Both Principal or Agent May Sue oh It. — Where a contract, not under seal, is made Ry an agent in Ris own name, for an undisclosed principal, either the agent or the principal may sue upon it, and parol evidence is admissible to enable the principal to show that Re is the real contracting party. Deitz v. Prov. Wash. Ins. Co., 31 W. Va. 851, 8 S. E. Rep. 616, cited and approved in Murdock v. Franklin Ins. Co., 33 W. Va. 407, 10 S. E. Rep. 778.
Evidence Always Admissible to Disclose Principal.— In cases of undisclosed principals, parol evidence is always admissible to show who is the principal, that Re may either take the benefits or the responsibilities of the agent’s act. Waddill v. Sebree, 88 Va. 1012, 14 S. E. Rep. 849; Deitz v. Prov. Ins. Co., 31 W. Va. 851, 8 S. E. Rep. 616; Murdock v. Franklin Ins. Co., 33 W. Va. 407, 10 S. E. Rep. 778.
VIII. RATIFICATION.
Generally. — When the agent exceeds his authority, the act may be ratified Ry the principal; and it is not necessary that there should be any positive or direct confirmation. Where, with a knowledge of the facts, the principal acquiesces in the acts of the agent, under such circumstances as would make it Ris duty to repudiate such acts if Re would avoid them, such acquiescence is a confirmation of the acts of the agent. It is not necessary that such knowledge shall be shown by positive evidence; it maybe deduced, or inferred from the circumstances and facts of the case. Curry v. Hale et al., 15 W. Va. 867. See also, Richmond, etc., Ry. Co. v. N. Y., etc., Ry. Co., 95. Va. 386, 28 S. E. Rep. 573; Owens v. Boyd Land Co., 95 Va. 560, 28 S. E. Rep. 950; Ruffner, etc., Co. v. Hewitt, etc., Co., 7 W. Va. 585.
Instances. — A. Ry letter of attorney authorizes B. to put Ris name to or upon any negotiable note, as maker or indorser, for the purpose of getting the same discounted at one or other of certain specified banks, to the amount of $3,000 and then for renewal of such note at bank, from time to time, so as the amount shall at no one time exceed $3,000; B. makes a note for $3,000 accordingly, which is discounted at bank, and renewed from time to .time. but at length reduced to $1,000; and then, B. purchases groceries of C. and for the price thereof, gives Rim a note made by A. Ry B. Ris attorney, negotiable at one of the specified banks, which the bank refuses to discount. Held, this note for the prices of the groceries, is not within the authority conferred on B. by A.’s letter of attorney, and is not Rinding on A. A. being informed of the making of the note Ry B. and of all the circumstances, makes no complaint, and afterwards procures indemnity from a third person against loss by reason of the note. Held, this does not amount to confirmation of B. 's unauthorized act in making the note. Hortons & Hutton v. W. & E. Townes, 6 Leigh 47.
Must "Ratify in Whole — Cannot Ratify Part Only of Agent’s Act. — Where an agent buys a claim for his principal, and in order to induce the seller to part with it makes false and fraudulent misrepresentations in reference thereto, and the principal accepts the purchase and takes the benefit thereof, he cannot while claiming the benefit of the purchase and retaining the claim repudiate said representations of his agent, on the ground that they were not authorized by him and were not within the scope of his authority. Lane v. Black, 21 W. Va. 617. See also, Day v. Building Assoc., 96 Va. 484, 31 S. E. Rep. 902; Ruffner, etc., Co. v. Hewitt, etc., Co., 7 W. Va. 585.
Principal Must Disaffirm. — When informed Ry his agent of what he had done, if the principal did not choose to affirm the act, it was his duty to give immediate information of his repudiation. He cannot, by holding his peace and apparent acquiescence, have the benefit of the contract if it should turn out to Re profitable, and retain a right to repudiate it if otherwise. The principal must, therefore, when informed, reject within a reasonable time, or be deemed to adopt Ry acquiescence. Johnson v. Gibbons, 27 Gratt. 636; Coffman v. Bruffy, 26 Gratt. 698; Higginbotham v. May et at., 90 Va. 239, 17 S. E. Rep. 941, and having once affirmed he is bound Ry the agent’s act or contract. Anderson v. Creston Land Co., 96 Va. 257, 31 S. E. Rep. 82. See also, Ruffner, etc., Co. v. Hewitt, etc.. Co., 7 W. Va. 585.
. The conduct and acts of the principal, tending to imply a ratification of the agent’s unauthorized acts, are construed liberally in favor of the agent. Ruffner, etc., Co. v. Hewitt, etc., Co., 7 W. Va. 585.
Effect of Ratification. — Ratification has a complete retroactive efficiency, relating back to the very inception of the contract or act. Ruffner, etc., Co. v. Hewitt, etc., Co., 7 W. Va. 585.
Applies to Torts. — Ratification applies as well to a tort as to a contract. The rule is well expressed Ry Bubks, J., in Forbes & Allers v. Hagman and Graviller, 75 Va. 168, “This was’a virtual ratification and adoption of what had been done by the agent on the principle omnis ratihdbitio retrotraliitur et mandato priori ceauiparatur, which applies as well to a tort, when done to the use or for the benefit of him who subsequently adopts it, as to a matter of contract.” The learned judge has gathered all the authorities on this subject in his elaborate opinion.
IX. QUESTIONS OF EVIDENCE.
Where it does not distinctly appear from the terms of the paper, whether credit was given to the agent or the principal, parol evidence is admissible to remove the doubt. Early v. Wilkinson, 9 Gratt. 68; R. F. & P. R. R. Co. v. Snead, 19 Gratt. 354; Walker v. Christian, 21 Gratt. 293.
Where the record does not show whether the *423 defendant confessed judgment by an attorney at law or an attorney in fact, evidence aliunde is admissible to show that such attorney was an attorney in fact, and to show the authority under which he acted. Calwells v. Sheilds, 2 Rob. 305.
An agent is a competent witness to prove his own parol authority. Piercy v. Hedrick, 2 W. Va. 458.
Declarations or acts of an alleged agent cannot be accepted to prove his agency. That fact must be proved by other evidence, and must be first established before his declarations or acts are admissible as evidence. But declarations and acts tending to establish the agency, said or done by the alleged agent in the 'presence of the principal, and not repudiated by him, are admissible in evidence as tending to prove the agency. Hoge v. Turner, 96 Va. 624, 32 S. E. Rep. 291.
An alleged agencywhichis denied cannot be established by proof of the admissions or statements of the alleged agent, but the fact must be proved by other evidence. If it is desired to establish it by the alleged agent himself he must be called as a witness. Fisher v. White, 94 Va. 236, 26 S. E. Rep. 573.
To prove the authority of an agent, the parol directions of the principal to him may be given in evidence. Lunsford v. Smith, 12 Graft. 554.
X. TERMINATION OP THE RELATION.
The death of either party terminates the agency, and after the death of the principal no act of the agent can bind the estate of the principal. Huston v. Cantril, 11 Leigh 136.
The agency can also be terminated by either party at any time, but where the principal revokes the agent’s authority, he must give third persons, who have dealt with the agent, as his agent, notice, else he will be liable for any loss they may incur, though not having received such notice. Spencer v. Wilson, 4 Munf. 130.